**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**ANITA SAWYER**

     **Plaintiff,**

**v.**                               **CIVIL ACTION NO. _____**

**MAK ENTERPRISES, LLC
d/b/a Beach Auto Sales, and
FREEDOM AUTO FINANCE LLC,**

     **Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, ANITA SAWYER**,** by counsel (herein "Plaintiff" or "Ms. Sawyer"), and for her Complaint against Defendants, MAK ENTERPRISES, LLC d/b/a Beach Auto Sales and FREEDOM AUTO FINANCE LLC*,* alleges as follows:

### INTRODUCTION

1.    This case arises from a fraud and theft committed against an African-American woman who bought a car on credit from a dealer who concealed from her the terms of the credit to coerce her into paying a higher amount that she could afford. As a result of the dealer's misconduct, she suffered stress, lost time, and inconvenience. The fraudulent scheme violated the federal Truth In Lending Act (TILA). The dealer's actions also violated the Virginia Consumer Protection Act (VCPA) and the Uniform Commercial Code, and constituted fraud and conversion. Plaintiff brings this action to recover actual damages, statutory damages, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to the TILA, 15 U.S.C. § 1640, and 28 U.S.C. §§ 1331, 1343(a)(3). Supplemental jurisdiction of the state law claims regarding the same transactions and events is provided under 28 U.S.C § 1367. This Court has venue over this action because the transaction occurred in Virginia Beach, Virginia.

## PARTIES

3.      Plaintiff Anita Sawyer (Ms. Sawyer), is a natural person, who negotiated a car sale on credit for consumer purposes as governed by the TILA and the VCPA.

4.       Mak Enterprises LLC, doing business as Beach Auto Sales, ("Beach Auto") is a Virginia limited liability company and a retail automobile dealer doing business at 5564 Virginia Beach Blvd, Suite A, Virginia Beach, Virginia, 23462. In the transaction with Plaintiff, Beach Auto was a "creditor" as defined by the TILA, 15 U.S.C. § 1602(g).

5.      Freedom Auto Finance, LLC ("Freedom Auto") is a Virginia limited liability company doing business at 5564 Virginia Beach Blvd, Suite A, Virginia Beach, Virginia 23462.

## FACTS

6.      In or around May 2020, Ms. Sawyer was in dire need of a vehicle as reliable transportation to and from work.

7.      She had been saving up her money so that she could put a downpayment on car and finance the remainder.

8.      Ms. Sawyer then went to Beach Auto to look at vehicles and try to purchase a vehicle.

9.      Ms. Sawyer expressed interested in purchasing a 2006 Hyundai Accent CLS with VIN KMHCN46C46U011071 (the "Hyundai Accent").

10.     Beach Auto, through its agent, asked Ms. Sawyer if she liked the Hyundai Accent.

11.     Ms. Sawyer told Beach Auto that she did like the Hyundai Accent.

12.     Ms. Sawyer asked Beach Auto if she paid $650 that day, could she buy the Hyundai Accent.

13.     Beach Auto told Ms. Sawyer that it would sell her the Hyundai Accent if she paid a $650 downpayment that day.

14.     As more fully detailed below, Beach Auto never intended to sell Ms. Sawyer the Hyundai Accent, but rather sought to collect a significant some of money from Ms. Sawyer so that it could pressure her into buying a different vehicle from Beach Auto on whatever terms Beach Auto wanted.

15.     Ms. Sawyer did not know of Beach Auto's secret plan.

16.     Ms. Sawyer reasonably believed that Beach Auto had agreed to sell her the Hyundai Accent for the $650 downpayment.

17.     Beach Auto also told Ms. Sawyer that it would still need to change the oil and put a tracking system in the Hyundai Accent before she could pick it up.

18.     Ms. Sawyer then paid Beach Auto $650 as a downpayment towards the purchase of the Hyundai Accent.

19.     This $650 was the vast majority of funds that Ms. Sawyer had available.

20.     After she gaver her money, Ms. Sawyer signed a series of documents, none of which she was given a copy.

21.     Ms. Sawyer asked Beach Auto to provide her with a copy of the documents she signed and Beach Auto refused.

22.     Beach Auto told Ms. Sawyer that one of the documents she signed was a receipt book, which was to indicate that the Hyundai Accent was reserved for her.

23.     Ms. Sawyer and Beach Auto discussed how much Ms. Sawyer would need to pay in periodic payments and Ms. Sawyer explained that she had limited income.

24.     However, Beach Auto did not inform Ms. Sawyer of the actual terms of the credit for her purchase of the Hyundai Accent.

25.     Beach Auto never provided her any written disclosures of the terms of the credit.

26.     Beach Auto then told Ms. Sawyer that the Hyundai Accent would be ready for her to pick up the next day because Beach Auto first needed to change the oil and install a GPS tracking system.

27.     The following day, Ms. Sawyer took the day off from work to pick up the Hyundai Accent.

28.     Beach Auto then informed Ms. Sawyer that the Hyundai Accent would not be ready for her to pick up that day.

29.     Because she had already taken the day off from work, Ms. Sawyer traveled Beach Auto that day to inquire in person about the status of the Hyundai Accent and when it would be ready

30.     Beach Auto told Ms. Sawyer that the Hyundai Accent would be ready for her to pick up in several days.

31.     While at the dealership, Ms. Sawyer heard a mechanic say that Beach Auto did not have the appropriate tools to install the GPS tracking system.

32.     Several days later, Ms. Sawyer returned to Beach Auto.

33. On this visit, Ms. Sawyer met with Jacob, who represented himself as a sales representative at Beach Auto, ("Jacob") who informed Ms. Sawyer that the Hyundai Accent was no longer available.

34. Jacob told Ms. Sawyer that Beach Auto had sold the Hyundai Accent to another person and that Beach Auto had done so because that person had paid more money than Ms. Sawyer had paid.

35. Ms. Sawyer requested her down payment of $650 back.

36. Jacob refused to refund Ms. Sawyer the $650 she paid.

37. Beach Auto refused to refund Ms. Sawyer the $650 she paid so that it could pressure her into agreeing to purchase another vehicle from Beach Auto.

38. Jacob then offered to sell Ms. Sawyer another vehicle without identifying what vehicle that would be.

39. Ms. Sawyer told Jacob she did not want to buy another vehicle from Beach Auto.

40. Ms. Sawyer repeatedly asked to be refunded the $650 and each time Beach Auto refused.

41. Ms. Sawyer became upset and distressed as she did not want to do business with Beach Auto but did not have any other money to purchase a vehicle and needed one to get to her job.

42. Ms. Sawyer had to call a friend to pick her up from Beach Auto that day.

43. She was forced to leave without her $650.

44. Because she did not have her $650, Ms. Sawyer could not use that to buy a vehicle from a different dealer.

45.     Exactly as planned by Beach Auto, Ms. Sawyer was unable to buy a vehicle elsewhere and was dependent on Beach Auto.

46.     Several days later, Beach Auto called Ms. Sawyer and told her that it had another car ready for her.

47.     Ms. Sawyer took a day off from work and went back to the Beach Auto.

48.     Once at Beach Auto, Ms. Sawyer had to wait approximately one hour before she was able to speak to a representative.

49.     The representative, again Jacob, informed Ms. Sawyer that the other car Beach Auto proposed to sell her was in fact not ready because it had not passed inspection.

50.     Ms. Sawyer expressed her frustration to Jacob, given the inconvenience Beach Auto had caused her.

51.     Jacob started yelling at Ms. Sawyer.

52.     Ms. Sawyer told Jacob to stop yelling at her.

53.     Ms. Sawyer then spoke to a manager at Beach Auto who said he would make Ms. Sawyer's issue a top priority.

54.     When Ms. Sawyer expressed her frustration to him, he told her she was being "rude."

55.     The manager also started yelling at Ms. Sawyer and Ms. Sawyer told him to stop yelling at her.

56.     Ms. Sawyer believes she spent several hours at Beach Auto that day and left without a car and without her $650.

57.     At this time, Beach Auto knew that it had successfully identified Ms. Sawyer as a person it could manipulate and take advantage of because it had her $650.

58.     Beach Auto's deceptive plan had worked as Ms. Sawyer believed the only way to quickly get value from her down payment was to still buy a car from Beach Auto despite its treatment of her.

59.     Ms. Sawyer called Beach Auto several days later and asked them when the next car that it planned to offer to sell her would be ready.

60.     Beach Auto refused to provide a firm date the car would be ready.

61.     Several days later, Beach Auto called Ms. Sawyer and told her that her vehicle was ready.

62.     Ms. Sawyer then traveled back to Beach Auto.

63.     Once Ms. Sawyer arrived at Beach Auto, she spoke with a young woman who identified herself as another sales representative of Beach Auto.

64.     Ms. Sawyer informed this representative that she was there because Beach Auto had told her that its alternate vehicle it planned to offer her was ready for her to pick up.

65.     The representative asked Ms. Sawyer to sit and wait in the client area.

66.     The representative then later informed Ms. Sawyer that the alternate car would not be ready that day.

67.     Ms. Sawyer expressed her frustration again to Beach Auto.

68.     A representative of Beach Auto then told Ms. Sawyer that the alternate vehicle will be ready the next day.

69.     Ms. Sawyer believes she was at Beach Auto for approximately four hours that day.

70.     She again was forced to leave without her $650 and without any vehicle.

71.     Beach Auto did not have an alternate vehicle ready the next day for Ms. Sawyer to purchase and pick up.

72.     Several days later, on or around May 24, 2020, Beach Auto again called Ms. Sawyer and told her that it had an alternate car ready for her.

73.     Ms. Sawyer traveled to Beach Auto that same day.

74.     Once at Beach Auto, Jacob offered to sell Ms. Sawyer a 2003 Ford Focus ZTS with VIN 1FAFP38323W156294 (the "Ford Focus").

75.     Beach Auto represented to Ms. Sawyer that the Ford Focus was in good working condition.

76.     Ms. Sawyer then told the Beach Auto she did not want the Ford Focus.

77.     Ms. Sawyer again requested a refund of the $650 that she had paid Beach Auto.

78.     Beach Auto again refused to refund her this money.

79.     A manager for Beach Auto then told Ms. Sawyer the Ford Focus was what Ms. Sawyer could afford.

80.     At this point, Ms. Sawyer felt that she was about to cry.

81.     By this point, Ms. Sawyer was in desperate need of a car to get to work.

82.     Without her $650 to buy a car elsewhere, she felt totally trapped into continuing to talk with Beach Auto.

83.     Beach Auto's secret plan had completely succeeded.

84.     When Ms. Sawyer test drove the Ford Focus, she noticed smoke was coming back into the car.

85.     Ms. Sawyer asked Beach Auto about this issue with smoke coming back into the car.

86.     Beach Auto assured Ms. Sawyer that the Ford Focus was in fine working condition and that the smoke was just from excess oil on the engine that needed to burn off.

87.     Beach Auto told Ms. Sawyer that she would need to pay more for each installment payment for the Ford Focus than what she would have paid for the Hyundai Accent.

88.     Ms. Sawyer told Beach Auto that she was not able to afford any higher payments.

89.     The salesperson who Ms. Sawyer spoke to about her concerns regarding affordability told her not to worry about the amount of the car payments.

90.     In desperate need of a car and lacking any other funds to make a down-payment, Ms. Sawyer agreed to take the Ford Focus.

91.     Beach Auto required Ms. Sawyer to sign a series of documents to take possession of the Ford Focus.

92.     Ms. Sawyer signed every document she was asked to sign.

93.     Beach Auto never provided a copy of these documents to her.

94.     Even when Ms. Sawyer asked for a copy of the documents she signed, Beach Auto refused to provide them.

95.     Ms. Sawyer was not informed of the terms of credit that Beach Auto was providing.

96.     While Ms. Sawyer was at the dealership, she heard other employees of Beach Auto refer to Jacob as a "finance manager."

97.     Ms. Sawyer also heard these employees explain that Beach Auto uses "in-house financing" whereby it rents a different office at the same location as the dealership, but uses a different name and slightly different address.

98.     Ms. Sawyer took possession of the Ford Focus and drove it home.

99.     Ms. Sawyer was admitted to the hospital the next day for a planned surgery.

100.    While Ms. Sawyer was in the hospital, Jacob contacted her to request her to make another payment for the Ford Focus.

101.    Ms. Sawyer explained she could not make a payment while she was in the hospital.

102.    During this conversation, Ms. Sawyer asked Jacob if her mother could come pick up the papers that Ms. Sawyer signed and Beach Auto refused this request.

103.    Once Ms. Sawyer was discharged from the hospital and able to drive the Ford Focus, she quickly started experiencing issues with the Ford Focus.

104.    Ms. Sawyer noticed that the engine would shut down sporadically and that the Ford Focus was not able to reach speeds needed to drive safely on the highway.

105.    Ms. Sawyer felt unsafe driving the Ford Focus because of these issues.

106.    Ms. Sawyer took her Ford Focus to several mechanics who explained there were multiple issues with the car.

107.    In or around July 2020, Ms. Sawyer discovered that the Ford Focus had been repossessed.

108.    Around the end of July 2020, Ms. Sawyer received a letter from Freedom Auto informing her that it had repossessed her Ford Focus and claimed that Ms. Sawyer had broken the sales agreement.

109.    At the point when her Ford Focus was repossessed, Ms. Sawyer had still not received a copy of the documents she signed with Beach Auto.

110.    Ms. Sawyer requested that Freedom Auto send her a copy for the sales agreement it referenced in its July 20, 2020 letter.

111.    Freedom Auto has refused to provide Ms. Sawyer with such a document.

112.    To date, Ms. Sawyer is not aware of what the purchase price was on the Ford Focus nor the terms of the credit for this purchase.

113.    Both Beach Auto and Freedom Auto operate from the same location.

114. Jacob acted as an agent for both Beach Auto and Freedom Auto.

115. Beach Auto and Freedom Auto share in the profits from the financing of car sales at 5564 Virginia Beach Blvd, Suite A, Virginia Beach, Virginia.

116. Beach Auto and Freedom Auto both share in the control of how those transactions are arranged.

117. Beach Auto and Freedom Auto are a joint venture.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### Violation of the Truth in Lending Act- 15 U.S.C. § 1638(a)

118. In its transaction with Ms. Sawyer for the purchase of the Ford Focus, Beach Auto extended credit to Ms. Sawyer.

119. As the creditor in the transaction, Beach Auto was required to provide Ms. Sawyer with accurate written TILA disclosures in writing about the credit it was offering before asking Ms. Galloway to agree to a credit transaction.

120. Beach Auto violated the TILA and Regulation Z because it never provided any TILA disclosures to Ms. Sawyer in a form she could keep.

121. Consequently, Ms. Sawyer had no idea what credit terms Beach Auto intended to extend to Ms. Sawyer.

122. Beach Auto violated the TILA and Regulation Z because it failed to provide the required disclosures regarding the financing of the purchase of the Ford Focus.

123. Ms. Sawyer suffered actual damages as a result of this violation.

## SECOND CAUSE OF ACTION

### Fraud

124.    Beach Auto intentionally told Ms. Sawyer she could purchase the Hyundai Accent to induce Ms. Sawyer into purchasing a vehicle from Beach Auto, when in reality, Beach Auto did not have any intention of selling the Hyundai Accent to Ms. Sawyer.

125.    Ms. Sawyer relied on this representation when she gave Beach Auto the down payment to purchase the Hyundai Accent.

126.    Beach Auto intentionally concealed the terms of credit to sell the Ford Focus to Ms. Sawyer.

127.    Beach Auto concealed the terms of credit to induce Ms. Sawyer into purchasing the Ford Focus.

128.    Ms. Sawyer relied on this concealment in that she did not believe she would be charged an unaffordable rate of interest, and she then agreed to purchase the Ford Focus.

129.    The credit terms were a material part of Ms. Sawyer's purchase of the Ford Focus.

130.    As a result of her reliance on Beach Auto's misrepresentation about the Hyundai Accent and the Ford Focus, Ms. Sawyer suffered substantial actual damages, including but not limited to, the loss of the terms that she accepted, the loss of her car, lost time, and inconvenience and other distress.

131.    Beach Auto's actions were in conscious disregard of Ms. Sawyer's rights such that punitive damages should be assessed against it.

**THIRD CAUSE OF ACTION**

**Violation of the Virginia Consumer Protection Act, Va. Code § 59.1-200**

132.    Pursuant to Va. Code § 59.1-200, Ms. Sawyer is entitled to pursue a VCPA claim against Beach Auto, who was a supplier in a consumer transaction as those terms are defined in Va. Code § 59.1-198.

133.    Against Ms. Sawyer, Priority violated the prohibition contained in Va. Code § 59.1-200(A)(14) against using any misrepresentation in connection with a consumer transaction in several different ways, including misrepresenting its intent to sell the Hyundai Accent to Ms. Sawyer, concealing the terms of credit for Ms. Sawyer to purchase the Hyundai Accent, repeatedly misrepresenting that it had a replacement vehicle ready to sell to Ms. Sawyer when it did not, misrepresenting the condition of the Ford Focus to Ms. Sawyer, and repeatedly refusing to give Ms. Sawyer a copy of the purchase agreement she signed to purchase the Hyundai Accent.

134.    Beach Auto also violated the prohibition contained in Va. Code § 59.1-200(A)(8) against advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised, and the prohibition contained in Va. Code § 59.1-200(A)(5) against misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits.

135.    Beach Auto committed these VCPA violations deliberately and willfully, or in the alternative did so negligently as a result of not maintaining procedures reasonably adopted to avoid the violations.

136.    As a result of the VCPA violations against her, Ms. Sawyer suffered substantial actual damages, including but not limited to, the loss of the terms that she accepted, the loss of her car, lost time, and inconvenience and other distress.

## FOURTH CAUSE OF ACTION

### Conversion

137.    Once Beach Auto refused to sell Ms. Sawyer the Hyundai Accent, Ms. Sawyer was legally entitled to a refund of the down payment she had paid Beach Auto.

138.     Beach Auto's refusal to refund Ms. Sawyer with her down payment was a wrongful exercise and/or assumption of authority over these funds and deprived Ms. Sawyer of her lawful possession and legal rights to these funds.

139.     These actions by Beach Auto constituted the tort of conversion, entitling Plaintiff to recover, among other things, the value of her vehicle at the time and the place of the taking.

140.     As a direct and proximate result of Priority's conversion, Plaintiff has suffered actual damages and injury, including but not limited to, the loss of her car, lost time, and inconvenience and other distress.

141.     Beach Auto's actions were in conscious disregard of Ms. Sawyer's rights such that punitive damages should be assessed against it.

## SEVENTH CAUSE OF ACTION

### Violation of Uniform Commercial Code- Va. Code § 8.9A-625

142.     In the consumer transaction of Ms. Sawyer's purchase of the Ford Focus, Freedom Auto was a secured creditor with the right to receive $572.56 per month starting July 2, 2018.

143.     It was not commercially reasonable for Freedom Auto to repossess the vehicle and claim Ms. Sawyer had violated the terms of the sales agreement when Ms. Sawyer had never been provided the terms of the sales agreement.

144.     By failing to conduct the repossession in commercially reasonable manner, Freedom Auto violated Part 6 of Title 9A of the UCC.

145.     Freedom Auto is liable to Ms. Sawyer for any loss caused by its failure to comply with Title 9A and Part 6, and, in any event, for an amount not less than the credit service charge plus ten percent of the principal amount of the obligation or the time-price differential plus ten percent of the cash price, as provided by Va. Code § 8.9A-625.

146.     Such amount will be determined from the sales agreement that Ms. Sawyer signed with Beach Auto.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1.   Assume jurisdiction of this case;

2.     Find Defendants to be a joint enterprise and thus jointly and severally liable for the above claims;

3.     Award actual damages to Ms. Sawyer under the TILA, Fraud, VCPA, conversion, and UCC claims against Beach Auto, in a manner so as to avoid a double recovery for the same harm;

4.     Award statutory damages in the amount of $2,000.00 for her claims, in accordance with the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(A)(i);

5.     Award three times the actual damages or $1,000.00, whichever is greater, for each willful violation of the Virginia Consumer Protection Act pursuant to Va. Code § 59.1-204(A);

6.     Award punitive damages against Beach Auto based upon its fraud and also its conversion, up to the amount allowed under Virginia law;

7.     Award minimum statutory damages under the UCC if the actual damages award under this claim is not greater for Freedom Auto's violation of the UCC;

8.     Award Plaintiff's costs and reasonable attorney's fees in accordance with the Truth in Lending Act, the Virginia Consumer Protection Act, and Virginia common law;

9.     Award pre-judgment and post-judgment interest; and

10.     Award such other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**

Respectfully Submitted,

**ANITA SAWYER,**

By:   */s/Kevin A. Dillon*
           Kevin A. Dillon (VSB # 93475)
           CONSUMER LITIGATION ASSOCIATES, PC
           763 J. Clyde Morris Boulevard, Suite 1-A
           Newport News, Virginia 23601
           Telephone:  (757) 930-3660
           Facsimile: (757) 930-3662
           Email:  kevin@clalegal.com

           Thomas D. Domonoske (VSB # 35434)
           CONSUMER LITIGATION ASSOCIATES, PC
           763 J. Clyde Morris Boulevard, Suite 1-A
           Newport News, Virginia 23601
           Telephone:  (757) 930-3660
           Facsimile: (757) 930-3662
           E-mail:  tom@clalegal.com

           *Counsel for Plaintiff*